UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                         Case No. 07-CR-272

DAVID A. WAUPOOSE, JR.,

      Defendant.

**DECISION ON APPLICABILITY OF 18 U.S.C. § 3559 AND ORDER
DENYING MOTION FOR SPECIFIC PERFORMANCE OF PLEA AGREEMENT**

On October 16, 2007, David A. Waupoose, Jr., a member of the Menominee Indian Tribe, was indicted for the first degree murder of 8-week old J.A.M. on the Menominee Indian Reservation contrary to 18 U.S.C. §§ 1111(a) and 1153. Specifically, the indictment charged that the "killing occurred in the perpetration of child abuse against J.A.M., and as part of a pattern and practice of assault against J.A.M., who was more than six years younger than Waupoose" (Doc. # 11). The circumstances alleged constitute two of the enumerated methods of committing first degree murder expressly set forth in the statute. Under § 1111(b), the penalty for first degree murder is death or life imprisonment. A death sentence was never a possibility for Waupoose, however, since the Menominee Tribe has not elected to have the death penalty available for crimes committed on its Reservation pursuant to 18 U.S.C. § 3598. Thus, if convicted of the indicted crime, Waupoose was facing a mandatory sentence of life in prison.

Prior to the scheduled trial date, the parties entered into a Plea Agreement in which the Government agreed to file an information charging Waupoose with second degree murder, which

is punishable by imprisonment "for any term of years or for life," § 1111(b), thereby allowing Waupoose to avoid a mandatory life sentence. In return, Waupoose agreed to enter a plea of guilty to the reduced charge of second degree murder and to request a sentence of no less than thirty-five years. The Government remained free under the agreement to argue for life, but later indicated orally that it would be arguing for a sentence of fifty years. On April 4, 2008, the Government filed the Information charging Waupoose with second degree murder, and Waupoose entered his plea of guilty as called for under the agreement. Sentencing was scheduled for August 11, 2008.

On August 6, 2008, Assistant United States Attorney ("AUSA") Timothy Funnell, counsel for the Government in the case, contacted Waupoose's attorney, Federal Defender Thomas Phillip, and informed him that he had inadvertently stumbled upon 18 U.S.C. § 3559 while working on another case. AUSA Funnell related to Attorney Phillip his belief that both subsections (d) and (f) of the statute applied to Waupoose and that both mandated a life sentence under the circumstances of this case. There is no cross-reference to § 3559 in § 1111, and neither of the parties were aware of the potential applicability of § 3559(d) or (f) to this case prior to AUSA Funnell's discovery of it in early August. The written Plea Agreement stated that the maximum penalty for second degree murder was life, but identified no mandatory minimum (Doc. #27, ¶ 7), and the plea colloquy conducted by the Court clearly indicated to Waupoose that the sentence imposed could be less than life. Section 3559 also went unmentioned in the Presentence Report ("PSR"), which had calculated Waupoose's sentencing range under the United States Sentencing Guidelines as between 210 and 262 months.

On August 7, 2008, the parties met in Chambers and informed the Court of the issue that had arisen. AUSA Funnell indicated his belief that, in light of § 3559, the Court was required to impose

a life sentence, despite the plea agreement entered into by the parties that had assumed the Court would have discretion to impose a lower sentence. Under the circumstances, AUSA Funnel indicated that the Government could not oppose a motion to withdraw his plea if Waupoose chose to file such a motion. Attorney Phillip, however, questioned whether § 3559 (d) or (f) mandated a life sentence and, if so, whether they could be constitutionally applied to the facts of this case. He asked for an opportunity to brief the issue and a briefing schedule was established. The parties have now submitted briefs on the applicability and constitutionality of § 3559, and Waupoose has filed a motion for specific performance of the plea agreement. In support of his motion, Waupoose argues 1) that neither subsection (d), nor (f), of § 3559, by its terms, mandates a life sentence in this case; 2) that, alternatively, in the event these subsections are determined to mandate a life sentence, each is unconstitutional as applied to the facts of this case; and 3) that regardless of the applicability and validity of § 3559 (d) or (f), Waupoose is entitled to specific performance of the plea agreement reached with the Government. For the reasons which follow, I conclude that § 3559(f) does apply and mandates a life sentence under the facts of this case. I further conclude that § 3559(f) is not unconstitutional and that Waupoose is not entitled to specific performance. Instead, Waupoose's only remedy is withdrawal of his plea.

**ANALYSIS**

**I.      Do 18 U.S.C. § 3559(d) and (f) Mandate a Life Sentence?**

18 U.S.C. § 3559 is entitled "Sentencing Classification of Felonies". In addition to setting forth the general classifications for felonies, misdemeanors, and infractions, the statute contains four subsections which set penalties for certain felonies. Subsection (c) is the federal three strikes law

3

and mandates a life sentence for qualifying repeat offenders. Subsection (d) mandates death or a life sentence for certain violent felonies committed against children. Subsection (e) mandates life imprisonment for repeated sex offenses against children, and subsection (f) imposes minimum and maximum penalties for offenders who commit specified crimes against children. Given Waupoose's offense, only subsections (d) and (f) are relevant here. I will address each in turn.

**A. 18 U.S.C. § 3559(d)**

Subsection (d) of § 3559 reads in relevant part:

**Death or imprisonment for crimes against children**.--

(1) In general.--Subject to paragraph (2) and notwithstanding any other provision of law, a person who is convicted of a Federal offense that is a serious violent felony (as defined in subsection (c)) or a violation of section 2422, 2423, or 2251 shall, unless the sentence of death is imposed, be sentenced to imprisonment for life, if--

    (A) the victim of the offense has not attained the age of 14 years;

    (B) the victim dies as a result of the offense; and

    (C) the defendant, in the course of the offense, engages in conduct described in section 3591(a)(2).

(2) Exception.--With respect to a person convicted of a Federal offense described in paragraph (1), the court may impose any lesser sentence that is authorized by law to take into account any substantial assistance provided by the defendant in the investigation or prosecution of another person who has committed an offense, in accordance with the Federal Sentencing Guidelines and the policy statements of the Federal Sentencing Commission pursuant to section 994(p) of title 28, or for other good cause.

The statute contains two cross-references. The first is an internal reference to "serious violent felony" from the three-strikes law. That definition, which is found at subsection (c)(2)(f) sets forth a list of offenses that qualify as "serious violent felonies", including "murder (as described in

4

section 1111)." Since § 1111 includes both first and second degree murder, Waupoose's conviction obviously meets this definition.

The second cross-reference is to 18 U.S.C. § 3591(a)(2), one of several death penalty statutes in Chapter 228. Section 3559(d)(1)(C) explicitly incorporates the "conduct described in section 3591(a)(2)." Section 3591(a)(2) authorizes the imposition of a sentence of death for a defendant who has been found guilty of an offense for which a sentence of death is provided, if the defendant, as determined beyond a reasonable doubt at a separate hearing:

> (A) intentionally killed the victim;
>
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act[.]

Summarizing all of its elements, then, § 3559(d) mandates a life sentence when an adult defendant murders an infant, and where the defendant in committing the offense engaged in any of the conduct described in § 3591(a)(2). Since Waupoose, an adult, has pleaded guilty to second degree murder in the death of 8-week-old J.A.M., the only issue that remains is whether his conduct in causing J.A.M.'s death falls within any of subparagraphs (A) through (D) of § 3591(a)(2).

Waupoose's conduct, in causing the death of 8-week old J.A.M., to the extent it satisfies the elements of the offense of conviction, would seem to fit the conduct described in subparagraphs (B)

5

and (D). An essential element of the crime is that Waupoose unlawfully killed J.A.M. "with malice aforethought." 18 U.S.C. § 1111(a). The phrase "malice aforethought" means "with the intent to kill [the victim] or with callous and wanton disregard of the consequences to human life." *United States v. Hillsberg*, 812 F.2d 328, 334 (7th Cir. 1987). Waupoose admitted to subjecting J.A.M. to a pattern of child abuse that culminated in a "headbutt" which he described as "a very hard blow to the right side of J.A.M.'s head." (Doc. # 27, ¶ 6.) Thus, Waupoose either (1) intentionally inflicted serious bodily injury resulting in the J.A.M.'s death, or (2) intentionally and specifically engaged in an act of violence that showed reckless disregard for human life and that caused J.A.M.'s death. Waupoose's guilty plea explicitly meets these criteria and thus a life sentence would, as an initial matter, be mandated under that subsection.

Subsection (d) of § 3559 does contain an exception, however. The exception set forth in subsection (d)(2) allows a sentencing court to impose something other than death or mandatory life, but only when it is based on "substantial assistance. . . in accordance with the federal sentencing guidelines" or "for other good cause." Substantial assistance is not at issue here, but good cause could be. Indeed, given the unusual procedural history of this case, the degree of remorse exhibited by Waupoose, and the fact that he falls within the lowest Criminal History Category and has a guideline range substantially below the mandatory life sentence, the Court would be inclined to find good cause under the circumstances of this case. Given this exception, I conclude that subsection (d) of 3559 does not mandate a life sentence and proceed to consideration of § 3559(f).

### B. 18 U.S.C. § 3559(f)

Subsection (f) of § 3559 reads in pertinent part:

6

> (f) **Mandatory minimum terms of imprisonment for violent crimes against children**.--A person who is convicted of a Federal offense that is a crime of violence against the person of an individual who has not attained the age of 18 years shall, unless a greater mandatory minimum sentence of imprisonment is otherwise provided by law and regardless of any maximum term of imprisonment otherwise provided for the offense–
>
> (1) if the crime of violence is murder, be imprisoned for life or for any term of years not less than 30, except that such person shall be punished by death or life imprisonment if the circumstances satisfy any of subparagraphs (A) through (D) of section 3591(a)(2) of this title . . .

The phrase "crime of violence" is defined in 18 U.S.C. § 16 to include either:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Second degree murder clearly fits within this definition. Thus, the only question remaining is whether the circumstances of Waupoose's crime satisfy any of subparagraphs (A) through (D). For the reasons described above, Waupoose's offense of conviction clearly satisfies at least subparagraphs (B) or (D). Thus, this subsection also appears to mandate a life sentence in this case. And unlike § 3559(d), subsection (f) offers no exception. Thus, it would appear that a life sentence is mandated.

In response, Waupoose offers two arguments against the application of § 3559(f) to the facts of this case. He first argues that his crime does not satisfy any of subparagraphs (A) through (D) of § 3591(a)(2) because he has not been found guilty of an offense for which the death penalty is provided. Instead he notes that his conviction is second degree murder contrary to 18 U.S.C. § 1111 for which the maximum penalty is life. This argument is based upon an obvious misreading of

7

§ 3559(f). That subsection cross-references only that portion of § 3591 that describes the specific circumstances of the offense, one of which must be found in order for the mandatory life penalty to apply. It does not incorporate § 3591(a)(2)'s requirement that the offense of conviction is one for which a sentence of death is authorized. Instead, it requires that "the circumstances satisfy any of subparagraphs (A) through (D) of section 3591(a)(2) of this title." 18 U.S.C. § 3559(f)(1). Because the circumstances of Waupoose's offense clearly satisfies at least one of subparagraph's (A) through (D) of § 3591(a)(2), subsection (f) of § 3559 mandates a life sentence.

Alternatively, Waupoose argues that even if a life sentence is mandated by subsection (f), the fact that subsection (d) does not mandate a sentence of life creates an ambiguity in the law which forces the Court to choose between the statutes. This ambiguity, Waupoose argues, must be resolved by resort to the rule of lenity which requires the court in construing criminal statutes to apply the more lenient reading when the statute is reasonably susceptible to more than one. *See United States v. Anderson*, 517 F.3d 953, 962 (7th Cir. 2007). But the rule of lenity is a tool of statutory construction that a court uses when it is construing an ambiguous statute. It has no application where the court is confronted with two unambiguous statues that are simply in conflict with each other. Here, for the reasons set forth above, I have already concluded that both subsections mandate a life sentence, but subsection (d) includes a "good cause" exception. Since subsection (f) contains no such exception, the two subsections appear to be in conflict, at least as they apply to the facts of this case. Where two statutes are irreconcilable, the conflict is resolved by deeming the earlier statute repealed by implication. *United States v. Patridge*, 507 F.3d 1092, 1095 (7th Cir. 2007)("repealed by implication depends on inconsistency that makes it impossible to comply with the newer law while still honoring the old one.") Here, to the extent that the two

8

laws conflict, it is clear that subsection (f) would control since, as Waupoose himself notes, subsection (f) is the more recent addition to § 3559. Subsection (d) was added in 1998 as part of the "Protection of Children From Sex Predators Act of 1998." Pub. L. 105-314, § 501, Oct. 30, 1998, 112 Stat. 2974. Subsection (f), on the other hand, was added in 2006 as part of the "Adam Walsh Child Protection and Safety Act of 2006." Pub. L. 109-248, § 202, July 27, 2006, 120 Stat 248. Since subsection (f) is the more recent enactment, it must control here. *See* 1A Sutherland, *Statutory Construction* § 23:9 (6th Ed.)("When two statutes are repugnant in any of their provisions, the later act, even without a specific repealing clause, operates to the extent of the repugnancy to repeal the first.") Thus, because the good cause exception that is part of subsection (d) is not contained in subsection (f), the more recent enactment, I conclude that subsection (f) controls. Accordingly, I conclude that § 3559(f) mandates a life sentence under the circumstances of this case. I therefore turn to Waupoose's arguments that the statute, as applied, is unconstitutional.

**II. Is § 3559(f) Unconstitutional as applied to the facts of this case?**

Waupoose makes three arguments that, as applied to the facts of this case, § 3559(f), to the extent it mandates a sentence of life, is unconstitutional. He first argues that § 3559(f) cannot be constitutionally applied to him because Congress arbitrarily separated § 3559 from the substantive statutes to which it applies, thereby depriving of him of notice. Waupoose argues that "it is absurd that Congress forces litigants to engage in a game of statutory 'hide and go seek' by putting a modification of 18 U.S.C. § 1111 in 18 U.S.C. § 3559, especially when § 1111 contains no reference to § 3559." (Mot. for Specific Performance at 10.) Waupoose notes that in this case, no one was aware of § 3559 during the charging, negotiating, plea or pre-sentence preparation of the

9

case until the Government inadvertently found the statute shortly before the scheduled sentencing date. Section 3559 was missed, Waupoose argues, because it is hidden in an entirely different section of the criminal code from the federal statute it purports to modify. To apply it under these circumstances, he argues, would be a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Waupoose is correct that it would violate due process to subject him to mandatory life sentence as a penalty for his offense without having notified him that a life sentence was mandatory prior to his entry of a guilty plea. It is in recognition of this principle that the Government has acknowledged that Waupoose, should he choose to do so, is entitled to withdraw his guilty plea and take his case to trial. But Waupoose cites no authority to support his contention that due process requires the federal government to organize the criminal code in a more user friendly manner. Common sense would seem to require better organization, but I am at a loss to find a provision of the Constitution that applies. A defendant has a right to be advised of the potential penalties for a crime before he enters a plea to it, regardless of where in the federal code the penalties are listed. Fed. R. Crim. P. 11(b)(1)(H); *United States v. Owens*, 441 F.3d 486, 489 (7th Cir. 2006) (noting that "a defendant has a right to fair notice of criminal penalties"). Since Waupoose is now free to withdraw his plea, his right to procedural due process is protected and no violation can be shown.

Although Waupoose does not explicitly raise the issue, I also note that this case is not governed by *Apprendi v. New Jersey*, which held that unless admitted by the defendant in the course of entering a guilty plea, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Section 3559(f) does not increase the penalty for second degree murder beyond

10

the prescribed maximum; instead it mandates the maximum. Thus, § 3559 is among those statutes that prescribe a mandatory minimum sentence not exceeding the statutory maximum for the offense of conviction based upon facts that a judge is authorized to find by a preponderance of the evidence. *United States v. Clark*, 538 F.3d 803, 812 (7th Cir. 2008) (We see no reason to depart from our precedent and continue to hold that '*Apprendi* has no application where a drug dealer is given a sentence at or below the maximum provided in § 841(b)(1)(C).'") (quoting *United States v. Hernandez*, 330 F.3d 964, 968 (7th Cir.2003)); *see also United States v. Jones*, 418 F.3d 726, 732 (7th Cir. 2005) ("Here, although the district court's finding that Jones discharged the firearm increased the applicable mandatory minimum sentence, the jury's verdict authorized the judge to impose any sentence up to the maximum of twenty years in prison."). Because § 3559(f) does not increase the maximum sentence authorized by the statute under which Waupoose entered his plea, the findings needed to invoke the mandatory sentence thereunder do not constitute additional elements of the offense. It thus follows that the Sixth Amendment is not implicated. Compare *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

Waupoose also claims that Congress overstepped its bounds in enacting § 3559(f) by effectively taking away the executive branch's discretion with child homicide offenses because, under the reading of the statute now adopted by the Court, virtually all child homicide offenses carry mandatory life terms. He claims that Congress has usurped the executive branch's function by "circumscribing the prosecutor's discretion entirely out of existence in a case with a child victim." (Motion at 13.) This argument fails as well. The Supreme Court has clearly held that Congress has the authority to mandate determinate sentences:

11

> Congress has the power to define criminal punishments without giving the courts any sentencing discretion. *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). Determinate sentences were found in this country's penal codes from its inception, *see United States v. Grayson*, 438 U.S. 41, 45-46, 98 S.Ct. 2610, 2613-2614, 57 L.Ed.2d 582 (1978), and some have remained until the present. *See*, e.g., 18 U.S.C. § 1111 (mandatory life imprisonment under federal first-degree-murder statute); 21 U.S.C. § 848(b) (mandatory life imprisonment for violation of drug "super-kingpin" statute); 18 U.S.C. § 2114 (1982 Ed.) (flat 25-year sentence for armed robbery of a postal carrier) (upheld against due process challenge in *United States v. Smith*, 602 F.2d 834 (CA8), *cert. denied*, 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979), and *Smith v. United States*, 284 F.2d 789, 791 (CA5 1960)). A sentencing scheme providing for "individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Lockett v. Ohio*, 438 U.S. 586, 604-605, 98 S.Ct. 2954, 2964-2965, 57 L.Ed.2d 973 (1978) (plurality opinion). *See also Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989).

*Chapman v. United States*, 500 U.S. 453, 467 (1991). Thus, the fact that Congress has mandated a life sentence for child murderers does not violate the constitution's separation of powers doctrine.

Waupoose's further argument that Congress has intruded into the executive branch's charging discretion also fails. The executive branch remains free to determine what charge, if any, to bring. Congress has only mandated that for certain offenses resulting in the death of children, a life sentence is required. Waupoose's argument that this somehow violates the separation of powers doctrine is without merit.

Finally, Waupoose argues that § 3559(f) violates the Equal Protection Clause of the Fourteenth Amendment because it "is far more likely to apply to Native Americans than to any other group, as federal murder statutes have limited application beyond reservation lands." (Def.'s Br. at 15.) Although Waupoose does not contend that subsection (f) of § 3559 was directed at Native Americans, he argues that it impacts that group disproportionately and that there is no compelling federal interest to punish Native Americans more harshly than other groups. (*Id.* at 16.)

12

Waupoose has offered no factual support for this claim that § 3559(f) disproportionately impacts Native Americans. If true, it would also seem that the same law would offer greater protection to Native American children by making the punishment for crimes against them more severe. Thus, he is unable to show the kind of "invidious discrimination" to which the Equal Protection Clause is directed. *Smith v. City of Chicago*, 457 F.3d 643, 553 (7th Cir. 2006) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). In any event, the argument is irrelevant as a matter of law. Equal protection principles deal with intentional discrimination and do not require proportional outcomes. Indeed, similar arguments have been rejected by the courts regarding the application of the three strikes laws and the harsher treatment of crack cocaine within the federal criminal code. *See United States v. Washington*, 109 F.3d 335 (7th Cir. 1997); and *United States v. Trice*, 484 F.3d 470, 476 (7th Cir. 2007). The argument is no more acceptable here. For all of these reasons, Waupoose's challenge to the constitutionality of §3559(f), as applied under the facts of this case, are rejected.

### III. Defective Indictment, Rescission and Specific Performance

Finally Waupoose argues that the indictment was defective because the Government failed to reference § 3559 in the indictment. He also contends that the Court has no authority to rescind the Plea Agreement and, even if it did, rescission would be unfair because he relied upon the Agreement to his detriment by pleading guilty and submitting various documents to establish facts in mitigation of the crime, including a letter accepting responsibility, a social history report, a sentencing memorandum, and a report from a medical examiner. Though filed under seal, Waupoose notes that all of these documents are now a part of the record. He contends that they

13

contain admissions he would never have made if he thought the case were going to trial. Because of his detrimental reliance, he contends he is entitled to specific performance of the Plea Agreement.

None of these arguments has merit. There is no requirement that an indictment reference the penalty provisions applicable to the crime charged. "An indictment is sufficient if it states the essential elements of the offense charged, fairly informs the defendant of the charges against him so that he may prepare a defense, and protects the defendant against future prosecution that may result in double jeopardy." *United States v. McCarty*, 862 F.2d 143, 144-45 (7th Cir. 1988). The federal rules do require an indictment or information to contain a citation to the statute violated, but even an incorrect citation or the omission of such citation is not grounds to dismiss the charge or reverse a conviction. Fed. R. Civ. P. 7(c)(1) and (3). While it is considered good practice to put the penalty sections in to the indictment, the Government is not required to do so. *United States v. Webb*, 369 F.2d 530, 536 (5th Cir. 1967). It therefore follows that the Indictment was not defective in failing to reference § 3559(f).

Waupoose's argument that the Court has no authority to rescind the Plea Agreement is beside the point. The Government has not asked the Court to rescind the Agreement; it has merely advised the Court that it could not in good faith oppose Waupoose's motion to withdraw his plea if he elected to file one. The Government's offer not to oppose withdrawal of Waupoose's plea is fair and reasonable in light of its discovery that the Court lacks the authority to impose a sentence of less than life. In other words, Waupoose cannot, as a matter of law, receive the benefit that his attorneys bargained for. Since he obviously entered his guilty plea with an incorrect understanding of the penalty he faced, Fed. R. Crim. P. 11, as well as due process, demands that he be allowed to withdraw it.

14

*Garcia-Aguilar v. United States District Court*, 535 F.3d 1021 (9th Cir. 2008), which is cited by Waupoose in support of his position, is not to the contrary. In *Garcia-Aguilar*, the defendants had entered guilty pleas to the crime of illegally reentering the United States after removal, contrary to 8 U.S.C. § 1326. The defendants entered their guilty pleas before magistrate judges who, after conducting the Rule 11(b) colloquy, recommended that the district courts accept them. In the meantime, the United States Attorney had obtained superceding indictments charging the defendants with having reentered after removal for an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). The effect of this change in the crime charged was that the maximum penalty increased from two to twenty years. At the urging of the Government, the district courts refused to accept the pleas to the original charge on the theory that the defendants had not been properly informed of "any maximum penalty," as required by Rule 11(b)(1)(H). The Ninth Circuit concluded that the defendants had been properly informed of the potential penalty and granted the defendants' petitions for mandamus. The fact that it had issued the wrong charge, the Court concluded, did not give the Government the right to correct its error after the defendants entered an unconditional guilty plea to that charge. The Court therefore directed the district court to accept the defendants' guilty pleas. Here, by contrast, the Government has not asked the Court to reject Waupoose's plea, nor does the Government seek to amend the charge. Instead, it has simply informed the Court that the sentence that it agreed Waupoose could recommend under the Plea Agreement could not be legally imposed for the crime to which he entered his plea.

There can be no doubt that AUSA Funnel was ethically obligated to bring to the Court's attention the fact that 18 U.S.C. § 3559(f) mandated a life term upon his discovery of that section. Under the Rules of Professional Conduct for Attorneys, "a lawyer shall not knowingly:

15

> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]

Wisconsin Supreme Court Rule ("SCR") 20:3.3 (Candor toward the tribunal). The Plea Agreement submitted to the Court by the parties inadvertently misstated the penalty for the crime Waupoose committed by failing to indicate that life was not only the maximum sentence, but also the minimum he could receive under the circumstances of this case. AUSA Funnel had an obligation under SCR 20:3.3 to inform the Court upon his discovery that § 3559(f) mandated a life term. Waupoose's choice at this point is either to go forward with that understanding or move for withdrawal of his plea.

In this respect, this case is more like *United States v. Billington*, 844 F.2d 445 (7th Cir. 1988). There, the defendant entered a guilty plea to a drug conspiracy charge pursuant to an agreement under which the parties agreed that the evidence would show that the offense involved between 1,000 and 2,000 pounds of marijuana and less than one kilogram of cocaine. The Government later learned from the defendant's co-conspirators, however, that the defendant had delivered four to six kilograms of cocaine, instead of only one, and submitted to the court an expanded offer of proof. *Id.* at 446. Claiming that the Government's offer of proof constituted a breach of the plea agreement, the effect of which would substantially increase the applicable sentence range under the United States Sentencing Guidelines, the defendant moved for specific enforcement of the plea agreement so as to preclude the Government from offering evidence of drug activity in excess of what the parties had stated in the agreement. The district court denied the

16

defendant's request, noting that to the extent that the agreement required the Government to withhold relevant information from the sentencing court, it was illegal and unenforceable. *Id.* at 448-49. However, the district court adjourned the sentencing to allow the defendant an opportunity to seek withdrawal of his plea. When he elected not to withdraw his guilty plea, the district court imposed a sentence that was based on the higher drug amounts set forth in the Government's expanded offer of proof, and the Seventh Circuit affirmed on the theory that the district court did not accept the defendant's initial guilty plea but that he had later ratified it with full knowledge that the court would consider the increased amount of cocaine involved. The Court further observed, however, that the district court would not have abused its discretion in refusing to enforce a plea agreement that restricts the sentencing court's access to relevant information. "[S]uch a plea agreement is unenforceable since it is contrary to public policy and "abhorrent" to the underlying goal of the American judicial system." *Id.* at 451, n.6.

The same conclusion applies here. Plea agreements are governed by the same principles that govern contracts. *Santobello v. New York*, 404 U.S. 527, 262-263 (1971); *U.S. v. Barnett*, 415 F.3d 690, 692 (7th Cir. 2005). In contract law, it is well established that an agreement that is contrary to public policy is unenforceable. RESTATEMENT (SECOND) OF CONTRACTS § 178 (1981). Thus, just as a defendant is not entitled to specific performance of a plea agreement that would preclude the Government from submitting information to the sentencing court, he is not entitled to enforcement of an agreement calling for an illegal sentence. "There can be no plea bargain to an illegal sentence." *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir. 2002). "Even when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law." *Id.* at 730; *see, generally*, Christopher Vaeth, Annotation, *Guilty Plea*

17

*As Affected By Fact That Sentence Contemplated By Plea Bargain Is Subsequently Determined To Be Illegal Or Unauthorized*, 87 A.L.R.4th 384 (1991 & Supp. 2001).

I also reject Waupoose's claim that he has suffered irreparable prejudice. This is not a case where the defendant has already served more than the amount of time he was promised. Compare *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180,184 (7th Cir. 1977). If he so chooses, Waupoose can withdraw his plea and be placed back where he started. Although he claims he made admissions in reliance on his agreement with the Government, it appears that before he entered his plea, Waupoose gave a written detailed confession to the FBI and sent an unsolicited multiple page letter of apology to the child's family. Any further admissions or other information disclosed by him in reliance on the Plea Agreement may be withdrawn and cannot be used against him. Since any such material was filed under seal, it was not disseminated publicly, and the case itself has not received the kind of media attention that would make selection of a fair and impartial jury unduly difficult. In sum, I find no evidence of irreparable harm or prejudice.

Finally, specific performance would be of no help to Waupoose under the circumstances of this case since the Court was not a party to the Agreement and would remain free to impose a term of life in prison in any event, notwithstanding the recommendations of the parties. Specific performance would not even entitle Waupoose to a sentence recommendation from the Government of less than life, since the Government did not bind itself to a particular recommendation. The Plea Agreement states: "The parties acknowledge and understand that the government is free to recommend any sentence, and that the defense will ask for a sentence of no less than 35 years in prison." (Doc. # 27, ¶ 22.) What Waupoose bargained for was a reduced charge of second degree murder and the right to recommend a sentence of not less that thirty-five years. Because he was not

18

informed that a life sentence was mandatory, he may withdraw his plea if he chooses.  But that is the only relief available.

The Defendant's motion for specific performance is therefore denied.  The clerk is directed to place this matter on the calendar for a status conference within the next ten days.

**SO ORDERED** this      15th      day of October, 2008.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge